CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 2 2 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ARTHUR LEE WOODS,** | ) | **CASE NO. 7:10CV00420** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA, ET AL.,** | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

Arthur Lee Woods, a federal inmate proceeding pro se, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"). Woods alleges that federal prison officials at the United States Penitentiary Lee County ("USP Lee") violated his constitutional rights while he was incarcerated there for several months in 2009. The court has reviewed the record and grants defendants' dispositive motion.

## I. Background

Woods' initial submission to the court arrived in a two-inch, three-ring binder, containing a "complaint" and a multitude of photocopied documents. The heading of the initial complaint stated Woods' intention to bring a civil rights action under Bivens, 28 U.S.C. § 1331, 1343, 1985, and 1986 and the FTCA, and listed as "defendants" numerous individual USP Lee officers, the Federal Bureau of Prisons ("BOP"), and two BOP administrators. The court filed the complaint conditionally, notified Woods that his complaint described incidents, but failed to state what claims he wished to bring, and granted Woods an opportunity to file an amended complaint. The court advised Woods that the amended complaint should (a) state each claim, (b) name the defendant(s) against whom Woods wished to bring that claim, (c) state facts

concerning conduct each defendant had taken in violation of his rights, and (d) particularize the facts in support of each claim, including dates and evidence of injuries. The court also advised Woods to state the specific act of negligence on which he intended to sue the United States under the FTCA and the specific actions on which he based his claims under 42 U.S.C. §§ 1985 and 1986. The court also advised Woods that under <u>Bivens</u>, he could not sue the United States, the BOP, or groups (like "BOP staff").

Woods filed an amended complaint (ECF Nos. 4, 9), raising claims about prison conditions and excessive force under <u>Bivens</u> and a medical negligence claim under the FTCA. Liberally construed, Woods' amended complaint alleges the following grouped claims:

### Claim 1: Cruel and Unusual Punishment

1A. On September 30, 2009, Defendant Trees, during a rehearing of an incident report, told Woods that he would never see a "DHO report" and stated, "I left the noose on the tree for you;" shortly after this incident, Woods' wife received 20 photos by email from an unknown source of "nooses and gallows."

1B. On October 9, 2009, Defendant Wilson threatened Woods' life by stating, "[T]hat jail house lawyer shit don't work with me–you're as good as dead." Woods wrote letters to Defendants White, Lappin, and O'Brien about his fear that his life was in danger from staff at USP Lee.

1C. On October 13, 2009, Defendant Wilson took all Woods' property for no reason.[1]

1D. On October 16, 2009, Woods "refused to cuff up for Warden Terry O'Brien," telling O'Brien that various staff members were trying to kill him; three hours later, an assembled use-of-force team, led by Lt. K. Martin, moved Woods to another cell, where Woods remained in ambulatory restraints for over 24 hours.

1E. On October 19, 2009, after officers accused Woods of breaking a sprinkler head, a use-of-force team moved Woods back to the B-Range holding cell, where Woods remained in restraints for over 34 hours.

---

[1] In Claims 1C and 1G, Woods complained that starting on October 9, 2009, he had no access to a phone or visitation, because he refused to leave his cell. The court summarily dismissed these aspects of Woods' amended complaint, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. (ECF No. 12.)

2

1F.  On October 20, 2009, then-Regional Director Kim White visited USP Lee and walked through the special housing unit, ignoring Woods, who was banging on his cell window and shouting, "I fear for my life from staff in USP Lee County!"

1G.  On October 27, 2009, a use-of-force team placed Woods in ambulatory restraints, and he remained in restraints for 48 hours.

1H.  On October 14, 2009, Andy Wolfe threatened Woods' life by using a hand gesture.[2]

### Claim 2:  Inhumane Living Conditions

2A.  On October 9, 2009, Defendant Lt. Martin locked Woods up in the B-range holding cell of the Special Housing Unit ("SHU") without any running water or toilet and deprived Woods of hygiene items and adequate food;

2B.  From the conditions in Claim 2A, Woods developed a black fungus on his right toe.

### Claim 3:  Excessive Force

3A.  On October 29, 2009, after officers removed Woods from ambulatory restraints, unnamed staff members assaulted Woods, slammed him to the floor, and placed him back in ambulatory restraints, which he later refused to take off for fear of another attack.

3B.  On October 30, 2009, Defendants Stiller and Shoemaker attacked Woods as they tried to force him into a wheelchair; Woods refused to get in and "h[eld] on[to] the bottom of the wheelchair."

3C.  On October 30, 2009, Defendant Trees and Officer Tipton came into Woods' cell and assaulted Woods.

### Claim 4:  Medical Negligence

On August 9, 2009, approximately 40 inmates attacked Woods in the chow hall, kicking him with steel toed boots, beating him with broom sticks, and punching and stabbing him; staff did not do a medical assessment of Woods' injuries and gave him only eye drops.

---

[2]  The court previously dismissed Claim 1H against Andy Wolfe, pursuant to § 1915A(b)(1), for failure to state a claim.  (ECF No. 12.)

3

(ECF No. 4, pp. 1-8.) As relief in this action (ECF No. 9), Woods seeks expungement of various incident reports, removal of alleged misinformation from his Central File, a transfer, and monetary damages.

Screening the amended complaint under 28 U.S.C. § 1915A(b)(1), the court summarily dismissed certain defendants from the action who were not named in the amended complaint and dismissed some portions of the amended complaint, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. [3] (ECF No. 7, 11.) Woods paid the costs to have the clerk's office mail notice of waiver of service of summons to the remaining defendants as follows: Harley Lappin, former Director of the Federal Bureau of Prisons ("BOP"); Kim White, former Regional Director of the BOP; and current and former USP Lee officials David Wilson, Captain; Terry Stiller, Lieutenant; Brian Shoemaker, Correctional Officer; Keith Martin, Lieutenant; Ted Trees, Lieutenant; and Terry O'Brien, Warden.

The defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment. Specifically, defendants move for dismissal of Woods' FTCA claim for lack of jurisdiction, for dismissal of other claims based on plaintiff's failure to plead sufficient factual support, and for summary judgment as to the remaining claims. Woods has responded to defendants' motions.

## II. Motion to Dismiss for Lack of Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim based upon a court's lack of subject matter jurisdiction. To determine its jurisdiction, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco

---

[3] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

4

v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004). "The plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp., 166 F.3d 642, 647 (4th Cir. 1999).

The FTCA provides the exclusive remedy for common law negligence claims against federal employees acting within the scope of their employment. 28 U.S.C. §§ 2671-2680. As a prerequisite to filing a civil action against the United States, the FTCA requires plaintiff to present his claim to the appropriate federal agency through an administrative tort claim. § 2675(a). Unless plaintiff has exhausted this case-specific, administrative remedy procedure before filing his civil action under the FTCA, the district court has no jurisdiction to adjudicate his FTCA claim and must dismiss it. Plyler v. United States, 900 F.2d 41, 42-43 (4th Cir. 1990).

Woods does not dispute defendants' specific evidence that he did not file any administrative tort claim to the BOP regarding his allegations of medical negligence in Claim 4. Because Woods did not exhaust administrative remedies as required under § 2675(a) before he filed this lawsuit, the court grants defendants' motion to dismiss Woods' FTCA claim for lack of jurisdiction.

### III. Motion to Dismiss for Failure to State a Claim

#### A. Standards of Review

Plaintiff's claims cannot survive a motion to dismiss under Rule 12(b)(6) unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.662, 129 S. Ct. 1937, 1949 (2009). In addressing the sufficiency of the plaintiff's complaint, the court must view the facts in the light most favorable to the plaintiff, but "need not accept the [plaintiff's] legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences,

5

unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). The court must dismiss the complaint if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007) (emphasis added).

Because Woods filed this action pro se, the court must hold his pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Fulfilling this obligation, the court allowed Woods to amend to state his claims more clearly, name appropriate defendants, and particularize his allegations in support of each claim. On the other hand, the court cannot ignore a clear failure in the pleading to allege facts necessary to state an actionable claim. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990). "District judges have no obligation to act as counsel or paralegal to pro se litigants." Pliler v. Ford, 542 U.S. 225, 231 (2004).

Under Bivens, an individual may bring a civil suit against an individual federal officer for damages stemming from that officer's actions in violation of plaintiff's constitutional rights.[4] Trulock v.Freeh, 275 F.3d 391, 402 (4th Cir. 2001) ("[Bivens] liability is personal"). Thus, portions of a complaint that do not allege actions by a specific individual official in violation of plaintiff's constitutional rights do not sufficiently plead a plausible Bivens claim and must be dismissed. Bell, 550 U.S. at 547.

---

[4] Technically, Woods' claims arise under Carlson v. Green, 446 U.S. 14 (1980), which extended Bivens to recognize an implied damages action against federal prison officials for violations of the Eighth Amendment. See Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A Bivens claim is analogous to a claim under 42 U.S.C. § 1983; consequently, case law involving § 1983 claims is applicable in Bivens actions. See, e.g., Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) (recognizing Bivens action as counterpart to § 1983 action and citing precedent from both types of cases to decide Eighth Amendment claims under Bivens).

6

## B. Claims from the Original Complaint

Woods omitted from his amended complaint several allegations raised in the original complaint, including the following: (a) allegations that officials at USP Tucson falsified information in Woods' classification paperwork that caused him to be sent to USP Lee with another inmate Woods had assaulted, in turn causing Woods to fear for his life while at USP Lee; (b) allegations that Woods' central file includes inaccurate statements that have adversely affected Woods' security classification; (c) allegations that various disciplinary convictions must be expunged because the evidence was insufficient or officials denied Woods certain procedural rights; (d) allegations that officials transferred him from one prison to another in order to retaliate against him; (e) allegations of unspecified violations of 42 U.S.C. §§ 1985 and 1986; and (f) allegations of retaliatory transfer from USP Hazelton to USP Allenwood in September 2010.

The conditional filing order warned Woods that to make these allegations actionable claims under Bivens, Woods needed to name individual federal officials as defendants and state facts concerning what each individual defendant did to violate Woods' constitutional rights. Because Woods has not pleaded facts about the current defendants in Claims (a), (b), (c),(d), and (e), the court grants their motion to dismiss as to these claims.

The court also dismisses these claims as to the unnamed defendants. Woods has not taken any steps to discover the names of these unknown defendants, add them to his amended claims, or accomplish service on them. Because more than 120 days has passed since Woods filed his complaint, Rule 4(m) of the Federal Rules of Civil Procedure requires the court, on its own motion, to dismiss the claims against these defendants without prejudice. Woods fails to demonstrate good cause for his failure to identify and serve these individuals within the time

7

allotted under the rule. Therefore, the court will dismiss without prejudice Woods' Claims (a),

(b), (c), (d), and (e) against unknown individuals, pursuant to Rule 4(m).[5]

In Claim (f), as amended (ECF No. 4-3), Woods alleges that Warden O'Brien

recommended Woods' transfer from USP Hazelton to USP Allenwood in retaliation for this

---

[5] Woods' allegations in these claims also fail to implicate any constitutionally protected right so as to state an actionable <u>Bivens</u> claim. A federal prisoner has no constitutional right to specific procedural protections when prison officials determine his custody classification or decide on a transfer. <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991) (finding that inmate has no liberty interest in changes to his location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and denial of privileges, because such changes are contemplated within the scope of inmate's original sentence to prison). Inmates also do not have any constitutional right to be incarcerated in any particular prison, jail, or confinement facility of any particular security level. <u>Meachum v. Fano</u>, 427 U.S. 215, 223-24 (1976). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976).
    Under these principles, Woods' allegations of wrongful actions or use of inaccurate information in the calculation of his custody level, his transfer to a prison outside his "region," or his transfer to the SHU with fewer property items and privileges simply are not <u>constitutional</u> issues that the court may adjudicate under <u>Bivens</u>. Woods' conclusory assertions of conspiracy and retaliation related to these claims are not sufficient to bring his classification problems under the umbrella of constitutional protections that can be vindicated through a <u>Bivens</u> claim. <u>See Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994) (finding inmate must present more than conclusory allegations of retaliation); <u>Brown v. Angelone</u>, 938 F. Supp. 340, 346 (W.D. Va. 1996) (finding that where allegations of conspiracy are merely conclusory, without facts showing common purpose to injure plaintiff, complaint may be summarily dismissed).
    Expungement of disciplinary convictions, as Woods alleged in Claim (c) and in his prayer for relief, is not an issue cognizable under <u>Bivens</u>. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 487-88 (1973) (finding that prisoners who want to challenge their disciplinary convictions, sentences, or administrative actions which revoke good-time credits must pursue such claim by petition for a writ of habeas corpus, rather than a civil rights action) (overruled on other grounds by <u>Heck v. Humphrey</u>, 512 U.S. 477, 482 (1994). If the challenged disciplinary conviction resulted in a loss of earned good time, Woods may seek to overturn that conviction through filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the jurisdiction where he is confined. <u>See Wilkinson v. Dotson</u>, 544 U.S. 74, 78-83 (2005); <u>In re Jones</u>, 226 F.3d 328, 332 (4th Cir. 2000). A disciplinary conviction that resulted in a penalty other than loss of good time ordinarily does not give rise to constitutional protections at all, and is not actionable in <u>habeas</u> or <u>Bivens</u>. <u>Oliver v. Powell</u>, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002) (citing <u>Sandin v. Conner</u>, 515 U.S. 472 (1995)) (stating that custody and security status and good time earning rates, because they are subject to change, do not implicate federal due process). Similarly, Woods has no actionable constitutional claim based on his allegations of "false" disciplinary convictions. <u>See, e.g.</u>, <u>Freeman v. Rideout</u>, 808 F.2d 949, 962-63 (2d Cir. 1986) ("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."); <u>McClary v. Fowlkes</u>, No. 1:07CV1080 (LO/TCB), 2008 WL 3992637, *4 (E.D. Va. 2008) (finding inmate has no constitutional right against being falsely accused of conduct that may result in deprivation of protected liberty interest).

lawsuit, which named O'Brien as a defendant.[6]  Woods submits a copy of a request for transfer,

signed by O'Brien on August 17, 2010, which stated as part of the "Rationale for Referral":

> According to a memorandum dated August 17, 2010, inmate Woods has current
> litigation pending against an Executive staff member at USP Hazelton.  Based on
> the facts presented [referring to listed security codes assigned to Woods], inmate
> Woods is no longer appropriate for the general population at this institution.  His
> transfer is requested to ensure he cannot make allegations of retaliation by the
> Executive staff due to the pending litigation.  It is recommended inmate Woods be
> transferred to any appropriate HIGH security level institution. . . .

(ECF 4-4, pp. 2-3.)  Woods asserts that this lawsuit against O'Brien is the reason O'Brien asked

for Woods to be sent to USP Allenwood, a higher level security facility, where Woods had

ongoing trouble with staff.

Inmates' claims of retaliation are generally treated with skepticism because "[e]very act

of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to

prisoner misconduct."  Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).  To succeed on

his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act

"was taken in response to the exercise of a constitutionally protected right or that the act itself

violated such a right."  Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).  Thereafter, plaintiff must

demonstrate that he suffered some adverse impact or actual injury.  ACLU of Md., Inc. v.

Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).  Additionally, an inmate must come

forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained

of incident . . . would not have occurred."  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

The facts Woods presents do not support a retaliation claim.  First, Woods did not file

this lawsuit until September 22, 2010, after O'Brien wrote the transfer recommendation, and the

defendants received the complaint, at the earliest, in March 2011.  Moreover, the transfer request

---

[6]  O'Brien was warden of USP Lee when Woods' claims in this action arose.  Woods left USP
Lee for USP Hazelton on November 3, 2009, and several months later, O'Brien became warden at USP
Hazelton.

expressed no intent to punish Woods for the lawsuit he had already filed, but rather stated a desire to avoid giving Woods any reason to file additional legal claims. The request does not demonstrate that O'Brien had any personal motive or intent to retaliate against Woods over litigation in August 2010. Second, in addition to the mention of then-pending litigation, the transfer request listed several specific security concerns as bases for Woods' transfer to a higher security facility, including a note that his security designation had been "updated to reflect a minor history of violence [within the last five years], due to inmate Woods being sanctioned for, at least, four incident reports for Assault without Serious injury while at USP Lee in 2009." (ECF 4-4, pp. 2-3.) Third, the transfer request indicates that O'Brien himself did not effectuate the transfer or determine the facility to which Woods would be designated. Because Woods fails to plead factual content from which the court can draw a reasonable inference that retaliation for exercise of a constitutional right was the "but for" cause of Woods' transfer to USP Allenwood, these allegations state no actionable retaliation claim. Iqbal, 129 S. Ct. at 1949. Accordingly, the court grants O'Brien's motion to dismiss as to this retaliation claim.

### C. Unnamed Defendants in the Amended Complaint

In Claims 1E, 1G, and 3A of the amended complaint, Woods alleges that unknown officers at USP Lee subjected him to ambulatory restraints for long periods of time and used force against him. The court expressly warned Woods that he would need to undertake efforts immediately to discover the names of any additional defendants and add them to his claims in the amended complaint, or they could not be served and would not be part of the lawsuit. (ECF No. 7, p. 2-3; ECF No. 11, p. 3-4.) The court also warned Woods that the time for accomplishing service on his defendants was limited.

Because Woods does not allege that any of the current defendants was personally involved in the incidents described in Claims 1E, 1G, and 3A, Woods fails to state any claim under Bivens against them. Iqbal, 129 S. Ct. at 1949. Therefore, the court grants defendants' motion to dismiss as to these claims.

Woods has not taken any steps to discover the names of these unknown defendants, add them to his amended claims, or accomplish service on them, and fails to demonstrate good cause for his failure to do so within the time allotted under Rule 4(m). Therefore, the court will dismiss without prejudice Woods' claims against these unknown individuals (Claims 1E, 1G, and 3A), pursuant to Rule 4(m).[7]

### IV. Motion for Summary Judgment

### A. Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

---

[7] Furthermore, as discussed infra, defendants' uncontested evidence makes it clear that Woods has no constitutional claim concerning the incidents at issue in Claims 1E, 1G, and 3A. Woods' own behavior created a need for officials to use force, the force applied was proportional to the threat officers reasonably perceived his behavior to pose, and the minimal injuries Woods suffered reflect that officers appropriately tempered the force applied in a good faith effort to restore order and did not wantonly use force for the purpose of harming Woods. See Hudson v. McMillian, 503 U.S. 1, 8 (1992).

11

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Detailed factual allegations in a verified, pro se complaint, based on personal knowledge, may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Where the nonmovant fails to respond to defendants' specific evidence contradicting conclusory allegations in the complaint to show a genuine issue of material fact on which a reasonable jury could find in his favor, however, defendants are entitled to summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Defendants move for summary judgment of Woods' remaining claims under Bivens. They assert that Woods failed to exhaust administrative remedies as to any of these claims, and in the alternative, that he fails to present any genuine issue of material fact in dispute on which he could show that defendants violated his constitutional rights or that defendants are entitled to qualified immunity.

## B. Exhaustion of Administrative Remedies

An inmate must exhaust "such administrative remedies as are available" to him with respect to the conditions of which he complains. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002). Moreover, § 1997e(a) requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 94 (2006). That is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 88.

A federal inmate's first step toward proper exhaustion is to pursue an informal grievance procedure, after which he must file a written formal complaint on the proper form at the institutional level within 20 days of the incident. See 28 C.F.R. §§ 542.10, 542.14. He must then appeal within 20 days of any adverse decision to the regional level, and then within 30 days of the regional response, to the Bureau of Prisons' Office of General Counsel ("OGC"). See 28 C.F.R. § 542.15. Only when an inmate has filed his claim at all levels of this BOP grievance procedure has he "exhausted" available remedies. Id. An inmate's failure to exhaust is an affirmative defense, and the burden is on the defendant to prove the failure to exhaust. See Jones v. Bock, 549 U.S. 199, 216 (2007).

Defendants present evidence that Woods failed to exhaust administrative remedies as to the prison conditions and excessive force claims he raises in his claims under Bivens. A review of Woods' administrative remedy filing history in SENTRY, the BOP's electronic records system, reflects that Woods has filed 101 administrative remedy requests while in BOP custody.

13

(Wahl Decl., Attach. D.) From March through October 16, 2009, while at USP Lee, Woods filed remedy requests about disciplinary hearings and sanctions, property, his custody classification score, and the application of a management variable on his custody classification. The BOP records do not indicate, however, that Woods properly filed administrative remedies about the cell conditions, verbal harassment and threats, and specific instances of excessive force that he asserts as claims in the amended complaint.

Woods asserted in response to the court's conditional filing order that he had exhausted administrative remedies. In support of this assertion, Woods filed dozens of photocopied documents, including disciplinary hearing reports, multiple copies of administrative remedy forms or appeals (often unnumbered and impossible to match with officials' responses), and numerous letters to prison officials and other federal authority figures, such as Eric Holder, United States Attorney General. Many of the grievances and appeals included in these exhibits address Woods' concerns about disciplinary reports. Many of the grievance or appeal responses indicate that the remedy or appeal was returned because Woods failed to follow procedure; he did not attach a copy of the institutional remedy and response; he filed the remedy outside the prescribed time limit; he attempted to raise more than one issue at a time; or he sent the remedy directly to the regional office or the OGC without properly completing the remedy procedure at the institution. No reasonable fact finder could find from this mountain of paper that Woods pursued the prescribed remedy procedures as to each of his claims in the amended complaint through each step of the remedy scheme in a timely manner as required for exhaustion.

Woods' response to the motion to dismiss makes no reference to defendants' exhaustion defense. In the face of defendants' specific evidence that Woods failed to make proper use of each level of the remedy procedures to present his <u>Bivens</u> claims to prison officials before filing

14

this action, Woods cannot rely on his prior conclusory assertion of exhaustion and his inconclusive exhibit collection. The court concludes that the record taken as a whole could not persuade a fact finder that Woods complied with § 1997e(a). Scott, 550 U.S. at 380. The court grants defendants' motion for summary judgment under § 1997e(a) as to all of the Bivens claims in the amended complaint.

## C. Eighth Amendment Claims

Even if Woods could demonstrate that he properly exhausted administrative remedies as to some or all of his claims under Bivens, defendants are entitled to summary judgment because Woods fails to establish any Eighth Amendment claim against them.

### 1. Verbal Threats

Allegations that officials verbally abused, harassed, or threatened an inmate with harm do not, without more, state any constitutional claim. Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Plaintiff's fear for his life, caused by an official's verbal threat, "is not an actual infringement of a constitutional right." Emmons v. McLaughlin, 874 F.2d 351, 353-54 (6th Cir. 1989). To the extent plaintiff alleges that any defendant threatened him, but fails to state facts about steps that defendant took to carry out the threat, plaintiff fails to state a claim of constitutional dimensions.[8]

### Claim 1A

In Claim 1A, Woods alleges that Defendant Trees made a threatening comment to Woods about "leaving the noose out" and that Woods' wife thereafter received email pictures of nooses, which she reported to the "FBI." Trees states that he spoke with Woods on September 30, 2009,

---

[8] See, e.g., Wilson v. McKellar, 254 Fed. App'x 960, 961 (4th Cir. 2007) (per curiam) (unpublished) (finding allegation that officer used racial slur while assaulting plaintiff, without more, failed to state cognizable § 1983 claim); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999) ("[A]lthough Carter alleges that individual officers insulted her with racial epithets, such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation.").

in the presence of Woods' case manager, about an incident report Woods received at another institution. After a rehearing, Trees upheld the previously imposed sanction. Trees denies making any comment to Woods about "nooses" or sending any email pictures to Woods' wife.

Taking the evidence in the light most favorable to Woods, Trees is entitled to summary judgment. Woods does not state any facts connecting Trees to the noose emails, nor does Woods state any conduct Trees took toward carrying out the alleged threat. Thus, even if Woods could prove that Trees made the comments and that they caused Woods to fear for his life, neither the comment nor the fear deprived Woods of any constitutionally protected right. Trees is entitled to summary judgment as to Claim 1A.

### Claim 1B

Woods alleges in Claim 1B that Defendant Wilson threatened Woods' life by saying, "that jail house lawyer shit don't work with me–you're as good as dead." Woods also claims that he told others (White, Lappin, and O'Brien) that Wilson's threat made him fear for his life. Wilson, then Captain of USP Lee, denies that he made the statement Woods alleges or that he otherwise threatened to harm Woods. Wilson states that as captain of the facility, his job was to protect inmates.

Even if Woods could prove that Wilson made the alleged verbal threat, Wilson is entitled to summary judgment. The threat alone, regardless of Woods' fearful reaction to it, did not violate Woods' constitutional rights, and Woods fails to allege that Wilson took any steps toward acting out the threat. Woods also fails to demonstrate that White, O'Brien, or Lappin violated his constitutional rights by failing to respond to reports of Wilson's alleged verbal threat. See Shaw, 13 F.3d at 799 (for supervisory liability, requiring evidence supervisor knew subordinates were "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"

16

to which the supervisor responded unreasonably). Defendants are entitled to summary judgment as to Claim 1B.

## 2. Ambulatory Restraints Incidents

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "To the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman. 452 U.S. 337, 347 (1981). An inmate presents an Eighth Amendment claim by showing that the defendant prison official acted with deliberate indifference to a substantial risk of harm–that he knew facts from which he drew an inference that a substantial risk of harm existed, yet failed to take "reasonable measures" to alleviate the risk. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). The inmate plaintiff must also state facts demonstrating that the challenged conditions caused him a serious or significant physical or emotional injury." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (omitting internal quotations).

In response to Woods' claims concerning the use of ambulatory restraints and the alleged use of excessive force, defendants present copies of USP Lee incident reports for October 16, 19, 27, and 30, 2009. Ambulatory restraints consist of handcuffs connected to leg shackles by a waist chain, with a black box over the cuffs. BOP regulations define ambulatory restraints as approved soft and hard restraint equipment that allows the inmate to eat, drink, and take care of basic human needs without staff intervention.[9] Woods' allegations are consistent with the

---

[9] See BOP Program Statement 5566.06, Use of Force and Application of Restraints, p. 11, available at www.bop.gov.

incident reports, and he does not contest the reports or the defendants' affidavits concerning the incidents.

### October 16, 2009

On October 16, 2009, at 12:52 p.m., officers repeatedly ordered Woods to comply with cuffing procedures as a necessary step toward moving Woods to another cell. Woods refused to comply and stated that he would not come out of the cell for any reason. Unable to gain Woods' voluntary cooperation, an officer ordered that Woods be placed in ambulatory restraints in the new cell because of his disruptive behavior.[10] A use-of-force team assembled to move Woods, but when this team arrived, Woods submitted voluntarily to the hand restraints and to being escorted to a new cell and placed in ambulatory restraints, where he remained for several hours.[11] After officers released Woods from restraints, medical staff assessed him and noted no injuries or impairment to circulation.

### October 19, 2009

Officers reported that Woods had broken the sprinkler head in his cell. Because of this disruptive behavior, officers decided ambulatory restraints were appropriate. When a use-of-force team arrived, Woods submitted to hand restraints and to being escorted to the new cell and placed in ambulatory restraints. Officers applied the restraints at 11:10 a.m. and released Woods

---

[10] BOP policy generally requires confrontation avoidance as a precursor to any use of force. The ranking officer on the scene, after conferring with a mental health professional and others about the inmate and the situation, attempts to avoid confrontation by reasoning with the inmate in an attempt to gain the inmate's voluntary cooperation; if the attempt fails, officers then determine if use of force is necessary. 28 C.F.R. § 552.23.

[11] Woods alleged in his amended complaint that defendants kept him in restraints for 24 hours after the October 16, 2009 incident. The incident report defendants offer in support of their motion for summary judgment, however, indicates that officers released Woods from ambulatory restraints at 8:00 p.m. on October 16, 2009, after seven hours in restraints.

18

from the restraints on October 20, 2009 at 10:00 p.m. Medical staff assessed Woods and noted no injuries and no complaints from Woods at any time during the restraint period.

### October 27, 2009

Woods refused his ninth consecutive meal on October 27, 2009, triggering a requirement under BOP regulations for Health Services to evaluate him to determine whether forced-feeding would be necessary to sustain him. When officers came to escort Woods to Health Services, he refused to come out of his cell. Woods failed to comply with repeated orders to submit to restraints so he could be moved from the cell and evaluated by medical staff. Due to this disruptive behavior, an officer ordered that Woods be placed in ambulatory restraints and assembled a use-of-force team. Woods then complied with officers' orders as necessary to be escorted to a holding cell, medically assessed, and placed in ambulatory restraints. Woods remained in these restraints from 12:52 p.m. until 8:30 p.m. on October 29, 2009, a total of 55 hours. During this placement, medical staff noted that Woods had minor abrasions on both wrists at 10:00 a.m. on October 29. Staff cleaned the abrasions and applied bandages. Woods does not mention these abrasions or any other injuries in his statement of this claim.

### Ambulatory Restraints Analysis

Woods apparently believes that a lengthy period in ambulatory restraints automatically constitutes cruel and unusual punishment. Because the prison environment is a dangerous one for correctional officers, however, courts must accord prison administrators "wide-ranging deference" to design and implement policies and restraint measures that they believe are necessary for the preservation of order and security, based on their professional judgment and experience. Whitley, 475 U.S. at 321-22. This court has held that the use of ambulatory restraints, even for lengthy periods similar to what Woods experienced, does not constitute cruel

and unusual conditions when the inmate suffers no significant physical or emotional injury as a result. Holley v. Johnson, Case No. 7:08CV00629, 2010 WL 2640328, *13 (W.D. Va. June 30, 2010).

On October 16, 19, and 27, 2009, Woods' own disruptive and resistant behavior created a need for officers to take some action to restore order and discipline. Woods' ultimate compliance with restraint procedures forestalled the need for officers to apply any force other than the ambulatory restraints themselves. The lengthy periods in restraints may have caused Woods some discomfort, and at times, resulted in minor abrasions. Nevertheless, the uncontested evidence simply does not support a reasonable inference that any of the defendants involved in applying or maintaining Woods' ambulatory restraints knew that these devices posed a significant risk of harm to Woods, as required to show deliberate indifference under Farmer, 511 U.S. at 835-37. Woods also does not allege that the ambulatory restraint periods he served at USP Lee caused him a serious or significant physical or emotional injury." Shakka, 71 F.3d at 166. Because Woods thus fails to establish the elements of an Eighth Amendment conditions claim,[12] the defendants are entitled to summary judgment as to Claims 1D, 1E, and 2A.

### Defendant White

In Claim 1F, Woods alleges that on October 20, 2009, while Woods was in ambulatory restraints after the sprinkler incident, Defendant White came through that section of the prison. Woods asserts that he shouted to her, "I fear for my life from staff in USP County," but complains, "White ignored my plea for help."

---

[12]  Woods does not include these ambulatory restraints claims under the "Excessive Force" subheading in his amended complaint. Even if he intended to allege that use of ambulatory restraints in these instances was unconstitutional, excessive force, defendants are entitled to summary judgment as to any such claims. See Holley, 2010 WL 2640328 at *14 (finding that use of ambulatory restraints with only minor resulting injuries for two days "is not a use of force that offends contemporary standards of decency so as to satisfy the objective component of an excessive force claim").

Woods apparently believes White should have known from seeing Woods in restraints and hearing his stated fears that USP officers were violating Woods constitutional rights; yet, as a supervisory official, White failed to prevent further violations. Given the court's finding that maintaining Woods in ambulatory restraints on October 20, 2009 did not, in fact, violate his constitutional rights, Woods fails to demonstrate any Eighth Amendment claim against White in her supervisory role for failing to order his removal from restraints. See Shaw, 13 F.3d at 799 Defendant White is entitled to summary judgment as to Claim 1F.

### 3. Inhumane Cell Conditions

In Claim 2A, Woods complains that on October 9, 2009, Defendant Martin placed Woods in a cell with no toilet or running water; a mattress wet with urine that officers replaced within a few hours; only boxer shorts, socks and a tee shirt to wear; temperatures so cold at night Woods would cry; and for some days, no toothbrush or toothpaste, and no soap. Woods used the one sheet provided to "cover feces." (Amend. Compl. 2.) Woods also alleges that "[s]taff tampered with my meals (spitting in my food and giving me half portions.)." (Id. at 3.) Claim 2B asserts that living in these conditions caused Woods to develop "a black fungus on [his] right toe" from having no shoes during this period. (Id.)

According to BOP cell assignment records defendants submit, on October 9, 2009, officers placed Woods in the B-Range holding cell, where he stayed until moved to another cell on October 16, 2009. This dry cell does not have a toilet or running water, but during the brief periods when officers place an inmate in such a cell, the inmate can ask for water or a urinal or bedpan as needed. Defendant Martin does not recall the incident Woods describes, but denies that he would have withheld clothing, food, bedding, or hygiene items as Woods alleges.

21

Even if Woods could prove all the conditions he alleges, the court finds no Eighth Amendment violation here. Woods does not state facts showing that living under these conditions for a maximum of seven days caused him any significant physical or emotional injury as required to meet the objective element of the claim. Shakka, 71 F.3d at 166. Woods chose not to use the sheet for his own warmth and does not allege losing weight from eating less while in the holding cell. Finally, Woods offers nothing more than speculation in support of his claim that having no shoes for a week caused toe fungus and states no facts showing this condition to be a significant medical problem.[13] Courts have rejected Eighth Amendment claims for lack of significant injury from living conditions far harsher than those Woods alleges suffering for a week at USP Lee.[14] The defendants are entitled to summary judgment as to Claims 2A and 2B.

### 4. Excessive Force

The Eighth Amendment does not prohibit all application of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). Correctional officials must daily make "snap judgments regarding the 'very real threats [that] unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom

---

[13] Woods provides a picture of the toe fungus and a medical request filed at USP Hazelton on April 8, 2010 about the toe fungus and about his right foot cramping during exercises he learned in therapy. (ECF No. 4-2, pp. 1-2.)

[14] See, e.g., Beverati v. Smith, 120 F.3d 500, 505 n. 5 (4th Cir. 1997) (noting that inmates' alleged confinement for six months in hot cells, infested with vermin and smeared with urine and feces, with only cold food in smaller portions, and infrequent changes of linen did not state Eighth Amendment claim with no showing that conditions "resulted in serious physical or emotional injuries"); Harris v. Fleming, 839 F.2d 1232, 1233-36 (7th Cir. 1988) (no violation where inmate not given soap, toothpaste or toothbrush for ten days and no toilet paper for five days); Schaeffer v. Schamp, No. 06-1516, 2008 WL 2553474, at *5-6 (W.D. Pa. June 25, 2008) (claim that inmate was placed in "hard cell" for ten days with no mattress, no pillows, no soap, no toilet paper, and no running water did not constitute cruel and unusual punishment); Lane v. Culp, No. 05-576, 2007 WL 954101, at *5 (W.D. Pa. Mar. 28, 2007) (allegation that inmate was denied running water for a period of days and forced to sleep on the floor without clothing or bedding for seven days failed to state a constitutional claim); Cooper v. Shaw, No. 5:10-CV-00158-RH-GRJ, 2010 WL 5553676, at *2-3 (N.D. Fla. Dec. 7, 2010) (noting that courts addressing the issue of failure to provide hygiene items, including mattresses and blankets, for a temporary period of time have found no constitutional violation).

Case 7:10-cv-00420-GEC-RSB   Document 81   Filed 03/22/12   Page 22 of 28   Pageid#: 1064

force might be used,'" and physical contact between officers and prisoners is an inherent part of the struggle to maintain order and provide safety. Id. at 493 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley, 475 U.S. at 319. When an inmate claims officers used excessive force against him, the court asks two questions: whether "the officials acted with a sufficiently culpable state of mind and [whether] the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8 (omitting internal quotations).

In applying the first, subjective component under Hudson, the court asks whether officials applied force maliciously and sadistically for the very purpose of causing harm, rather than as part of a good-faith effort to maintain or restore discipline. Id. at 7. The court must "focus on whether the evidence supports the inference that the guards wantonly punished" the inmate, and not on whether their actions were "necessary" in the court's eyes. Whitley, 475 U.S. at 319, 322. In Whitley, the Supreme Court recognized that relevant factors to determine this inquiry are: (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any efforts made to temper the severity of a forceful response. Id. at 321. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id.

> In recognition that the prison environment is a dangerous one for correctional officers, prison administrators must be accorded "wide-ranging deference" to design and implement policies and practices that in their judgment are necessary for the preservation of order and security. Whitley, 475 U.S. at 321-22, 106 S.Ct.

23

at 1085. Thus, when prison security measures are taken in response to an uprising or prison disturbance, the courts cannot always expect a perfectly measured response. "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. at 319.

Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998).

In addressing the objective component under Hudson, the court asks whether the force applied was "nontrivial." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1779 (2010). The objective inquiry is "responsive to contemporary standards of decency," and in the excessive force context, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9. Nevertheless, the extent of the inmate's injury is not "irrelevant" to the Eighth Amendment inquiries, as it "may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation" or may "provide some indication of the amount of force applied." Wilkins, 130 S.Ct. at 1778 (quoting Hudson, 503 U.S. at 7). As a result, "[a]n inmate who complains of a [mere] 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim ." Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9).

### October 30, 2009: Wheelchair Incident

Defendants Stiller and Shumaker describe the circumstances in which Woods' Claims 3B and 3C arose, consistent with Woods' allegations. On October 30, 2009, about 10:27 a.m., a use-of-force team assembled to remove Woods from ambulatory restraints and escort him to medical for further evaluation and monitoring in the medical unit. Defendant Stiller, aware of Woods' disruptive behavior in the SHU in the last several days, instructed the team that if Woods refused to walk to medical, they would place him in a wheelchair for transport to

24

medical. Woods stood in his cell in restraints, shouting that he feared for his life. When staff members opened the cell door, Woods backed away, still shouting. When officers reached for his arms to escort him, Woods sat or fell to the floor, wrapped his legs around Defendant Shoemaker's left leg, and grabbed onto the wheelchair. When officers tried to free Shoemaker's leg from Woods' grasp and force Woods into the wheelchair, Woods began kicking, still holding onto the wheelchair. Faced with Woods' assaultive behavior, Stiller ordered the team to leave the cell.

Woods sues Stiller and Shumaker for "le[ading] an attack and physically assault[ing]" him. (Amend. Compl. 3.) Woods alleges that during the struggle, Stiller slammed him to the ground and kneed him in the back, while Shumaker allegedly kicked and pulled on Woods, until Woods grabbed his leg and then the wheelchair. Woods does not mention any injury he suffered during this altercation.[15]

### October 30, 2009:

In Claim 3C, Woods alleges the following sequence of events. Defendant Trees grabbed a stick and a shield on his way to the A-range holding cell, where Woods was in ambulatory restraints. Woods started to yell, "I fear for my life from staff," and moved to stay in front of the window in view of the camera. Trees started moving Woods' handcuffs, and when Officer

---

[15] As part of his submissions, Woods has included color photographs depicting small pink, horizontal scars across the backs of Woods' ankles and faint reddish stripes around the inside of his wrists. (ECF No. 1, Exh. P). Woods states that staff at USP Hazelton took these pictures in mid-December 2009, six weeks after Woods left USP Lee.

25

Tipton reached for his arm, Woods moved away from his grasp toward the window and fell.[16] Trees "started choking" Woods, but stopped after Tipton put first his knee, and then his palm, on Woods' head, holding his face to the floor. Woods shouted, "[S]taff is attacking me while" I am in restraints. The officer started choking Woods again and pressing down his face to the floor with his palms, while a third officer held Woods' legs. Officers then carried Woods to C-range and strapped him down to a cement bunk. Woods refused to come out of restraints until his transfer from USP Lee to USP Hazelton on November 3, 2009.

Institutional records from this date and Trees' declaration reveal additional information consistent with Woods' allegations. (Mot. Summ. J. Exh. 1, Attach. H; Trees Decl.) Trees was the SHU Lieutenant in charge of conducting restraint checks on Woods on October 30, 2009. Trees states that as he approached Woods, the inmate shouted and charged into Trees, striking his upper body. Trees and Tipton tried to gain control of the resistant Woods and struggled briefly with him. Woods grabbed Trees' fingers, twisting his right middle finger and his left middle and index fingers, such that they were sore and sensitive afterwards. Woods' shouting about being attacked caused other inmates on the A-range of the SHU to begin kicking their cell doors and threatening to assault staff and initiate other disruptive activities. Because of Woods' assaultive behavior, supervisory personnel gave authority to place him in "progressive four-point [soft] restraints" on a bed.

---

[16] When screening the amended complaint, the court inadvertently overlooked Tipton's name in claim 3C and dismissed all claims against him under § 1915A(b)(1). Woods did not object to this dismissal and has not moved to amend to reinstate this defendant or accomplish service of process on him. See Rule 4(m). Moreover, for reasons stated here, Woods did not suffer any deprivation of constitutional rights during the October 30, 2009 incident. Therefore, the court summarily dismisses without prejudice any claim against Tipton, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

26

Medical staff assessed Woods after this incident and noted the following: 1/4 cm scratches to the right wrist area, with no bleeding or discoloration; an old band aid to the left wrist, an old scratch to the left ankle area, and no distress noted.

### Excessive Force Analysis

After careful review of the evidence, the court concludes that Woods has failed to forecast evidence by which he could persuade a fact finder under the subjective facet of <u>Hudson</u>, as defined by the <u>Whitley</u> factors, that the defendant officers wantonly applied force for the purpose of harming him. The uncontested evidence is that Woods' own course of resistant, assaultive behavior during the last week of October 2009 at USP Lee created the need for officers to employ force on October 30, 2009. Contrary to Woods' apparent belief, an inmate's personal fears do not excuse his noncompliance with officers' orders.

In the morning, the prison officials merely attempted to follow procedures to remove Woods' ambulatory restraints and have him assessed by medical staff in the manner that regulations required. In the afternoon, Trees and Tipton attempted to perform routine restraint checks. Woods' active resistance to the officers' efforts on both occasions created the need for officers to employ intensified physical measures to accomplish their objectives, in keeping with the first, second and fourth <u>Whitley</u> factors.

Woods has not established that he suffered any significant injury as a result of his altercations with officers on October 30, 2009. At the most, Woods points to the scars on his ankles, visible in the pictures taken at USP Hazelton some months later, and suggests that the officers' actions, rather than his own active resistance, somehow inflicted these wounds. (ECF No. 4-1, pp. 14-15.) The <u>de minimis</u> nature of the injuries and their location indicates that the

27

officers used only that measure of force necessary to control the inmate, looking to the third and fifth Whitley factors.

Under all factors of Whitley, 475 U.S. at 320-21, the court finds no genuine issue of material fact in dispute on which Woods could support a reasonable inference that any of the defendants wantonly applied force on October 30, 2009, with an intent to punish Woods, as required to prove the subjective facet of his Eighth Amendment claim under Hudson. 503 U.S. at 8. Rather, the evidence establishes that the officers applied the type and amount of force they believed was necessary to restore order in the face of Woods' uncooperative and belligerent actions. The defendants are thus entitled to summary judgment on Claims 3B and 3C without further discussion of the objective facet under Hudson, and the court grants their motion.[17]

## V. Conclusion

For the stated reasons, the court grants defendants' motion to dismiss, or in the alternative, motion for summary judgment, and dismisses without prejudice Woods' claims against unnamed and unserved individuals pursuant to Rule 4(m) and § 1915A(b)(1). An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

ENTER: This _22⁰_ day of March, 2012.

Chief United States District Judge

---

[17] Because the court concludes that the defendants are entitled to summary judgment on the merits of Woods' excessive force claims, the court will not address defendants' additional defense of qualified immunity.

28